The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oye, oye, oye, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention for the Court is now sitting. God gave the United States and this Honorable Court. Please be seated. Good morning. Judge Floyd and Judge Thacker and I are pleased to be hearing your cases today. And we'll be proceeding first in the case of Johnny Williams v. Lance Corporal Kyle Strickland. And here I'm at a little loss. Mr. or Ms. Gaines? Yes. Okay. Thank you. I apologize. Good morning. I hope that hasn't happened to you other times in your life. It has. Okay. That's okay. Good morning. May it please the Court. I'm Ellery Gaines here on behalf of Ray Heroux, a defendant and appellant in this case, and Kyle Strickland, arguing jointly with my co-counsel, Mary Moore. In this case, the district court erred in failing to award summary judgment to the defendants in the case on the matter, the issue of qualified immunity. In the situation that the officers were presented with in this case, they were forced to face a rapidly evolving, uncertain, very quick, succinct set of events. And they had to use split-second judgment in order to defend their lives. Do you agree with my thinking, my possible, at least my first reaction in this case is that this case all comes down to Waterman? Does Waterman apply or does Waterman not apply in this situation? It seems to me that's got to be a central thing we have to focus on here. It is, Your Honor, exactly. This case absolutely turns on Waterman and whether the law is clearly established. At the time that the officers were faced with Johnny Williams' conduct in 2012, Waterman is very, on many aspects, it's very distinguishable. And it absolutely does not put every reasonable officer on notice that their conduct in a situation like we have at hand would violate Johnny Williams' constitutional rights with the specificity that Al-Ked requires and that White v. Pauley requires to put the matter beyond debate. In Waterman, the court used the words, without veering. And the court used those words again in Brown v. Elliott in 2016, indicating that that was very important in the analysis. In Waterman, there was a chase that had gone on for several minutes and it ended at a toll intersection, which is a very wide highway. The record indicated that the individual never veered in the officer's direction and that it was unreasonable for them to use deadly force in the second and subsequent sets of shots. I believe that Waterman is applicable to this case on the holding that the first set of shots in Waterman was constitutional. And that's all we have here, Your Honor, if it does apply. And so, to turn that argument around, that Waterman would have put the officers on notice that their conduct would have been reasonable because, in this case, there was only one set of shots. And it was after Mr. Williams had reversed his automobile very rapidly and very recklessly, narrowly missing my client, Ray Hero. He jumped out of the way and there was a curve in the road. There was not a wide area of highway. And he immediately looked Ray Hero in the eyes and matched the gas. And his testimony, Ray Hero's testimony, is clear that he believed Johnny Williams was going to kill him. Why isn't this an interlocutory appeal? It seems to me you're arguing about the facts and sufficiency challenges. I don't see how we can review that. Not at all, Your Honor. This is not an interlocutory appeal because even if you take the light in the most favorable manner for the appellees, the plaintiff, which is what the court should have done. In which the court did, the district court made an inference in the light most favorable to Williams that there was no more danger after Williams passed the officers. And that is incorrect, Your Honor, because the standard is objective reasonableness. And the court should have looked at the totality of the circumstances as the Supreme Court has instructed. And when the evidence is taken in the light most favorable to the plaintiff, even if you take the evidence that Strickland was out, the testimony that the plaintiff presented that Strickland was out of the way of the vehicle, the whole succession of events was a matter of seconds. Well, had Williams passed the officers? No. I do not believe he has. Okay. So you're arguing the facts? It's a well-pled complaint. We have to take the complaint as pled as in the light most favorable to the plaintiffs. We're not here to weigh evidence anymore. It's just what does the complaint say? How did the judge interpret what the complaint said? That's right, Your Honor. So interpreting the complaint and all of the evidence in the light most favorable to the plaintiff, the objective reasonableness standard makes clear that the law was not clearly established to put every officer on notice that the conduct at hand was unreasonable. It has to be beyond debate. And the evidence, the record reveals and the evidence shows that there were no bullet holes from the side of the car. They were from the front and back. But that's not before this court. Even if you assume that Strickland had just jumped out of the way and narrowly missed being struck by that vehicle, a reasonable officer could assume, could be thinking that he's going to hit the brakes. He might pin them between the cars. He might pin them between the tree. He might put the car in reverse, as he had already done. The threat had not ended until this car was stopped. And the car was stopped by use of appropriate and constitutional deadly force. Under Tennessee v. Garner, one very important factor that the district court did not weigh is that Tennessee v. Garner held that when there was probable cause for an officer to believe that there is a threat, then deadly force is appropriate to stop a fleeing suspect. I don't understand why you can say that Waterman's not controlling, because it said that once the vehicle, for example, has gone past the officers, you can't continue to shoot or you can't start to shoot at that point. Well, Waterman, there are two things about that that are distinguishable, very distinguishable in this case. Waterman uses the term moment, and this happened in a matter of seconds. Johnny Williams has no testimony to offer in this case. He can't remember anything. Both officers testified under oath that this happened at warp speed. This happened, it all seemed to happen at the same time. It was very quick. It was on a curved road. It was a very narrow pathway, and the officers in Waterman, there are some measurements, and I think they're 65 feet, 50 feet. The testimony and the evidence in this case shows that this was a very narrow escape that Johnny Williams was trying to make, and the officers, and under the test of objective reasonableness, it is absolutely appropriate for a reasonable officer to assume that he was still in danger, even if Strickland had jumped out of the way just seconds before the car had struck him. But as a factual matter, we have to apply the fact that the Williams' car had passed the officers, don't we? You would, but the car had veered at both of the officers. Williams had veered in the direction of both of these officers. So what are you saying, then, that it's reasonable the officers could think he would veer backwards? Absolutely, that he might pin them between the car, that he might turn around. He had already done that with Heroux. He had backed up, and then he had come back at Heroux, and under the standard of objective reasonableness, this is very different from Waterman. This is not a case where, and the holding in Waterman was that the first set of shots were reasonable, and the shots in this case, the use of deadly force in this case, is much more similar to the first set of shots in Waterman rather than the second and third, which were held to be an inappropriate use of force. In addition, the Al-Kid decision makes clear that it has to be, the objective reasonableness standard requires that every reasonable officer would have been on notice that his conduct was violating the plaintiff's constitutional rights, and Waterman just does not establish that. It is not beyond debate under the facts of Waterman that in a situation, in the situation that Ray Heroux and Kyle Strickland faced in July of 2012, that their use of deadly force would have violated Mr. Williams' constitutional rights, and the reason is because there were mere seconds. It happened at warp speed. It all seemed to happen. The same thing in Waterman. It was just a few seconds. And the distance was farther in Waterman. These individuals, the police officers, were off to the side of the road. Waterman had a clear way to get by going through the toll booth, and in this case, that's not the situation. In this case, the objective reasonableness standard, when the court looks at the totality of the circumstances that they had just pulled up, he had, Ray Heroux had gotten out of his car and approached the suspect, and the suspect had gotten, had put the car in drive and moved farther into the apartment complex. So, Heroux gets back in his car and goes and parks perpendicular to him, and before he gets to the window, he pulls the car into reverse and recklessly reverses and nearly hits Heroux and then comes back at him. This has all happened in a matter of seconds, and when you take the totality of the circumstances, there is no clearly established precedent to put every reasonable officer on notice, beyond debate, that the use of deadly force in that situation would have violated Johnny Williams' constitutional right. And for that reason, the district court should have applied qualified immunity and granted summary judgment in favor of Ray Heroux and Kyle Strickland under the facts of this case.  Thank you, Your Honors. Mr. Callaway? Pardon? Oh, I'm sorry. Excuse me. Ms. Lohr, I apologize. Good morning. May it please the Court. My name is Mary Lohr, and I represent Officer Kyle Strickland. I'd like to go back to some of what my co-defendant's counsel was saying. With regard to Waterman, I believe there is reference in Waterman specifically to Tennessee v. Garner. The analysis, though, isn't fully set out in Waterman with both scenarios that the court finds that deadly force could be appropriate in Tennessee v. Garner. In Tennessee v. Garner, there's two scenarios where deadly force is constitutionally reasonable. First, when the suspect threatens the officer with a weapon. That's what we're talking about specifically in the first set of circumstances in Waterman. However, there's a second scenario, and actually was more to the point in Tennessee v. Garner, that the officer has probable cause to believe a fleeing suspect has committed a crime involving the infliction of serious harm if force is being used to prevent escape and where warning can be reasonably given. That's the second scenario versus Tennessee v. Garner. Now, the court doesn't explicitly talk about that in Waterman. It doesn't specifically reference that. However, it implicitly does when it references the without veering and talks about the car having already passed through the toll plaza. Without veering, the reason that's important is because they couldn't have believed that there was a threat after he had gone through past them without veering at them. Therefore, there wasn't any probable cause to believe that he had committed a crime involving the infliction of serious physical harm. In this case, Heroux and Strickland had just witnessed him attempt to hit Heroux when he backs up the car and when Strickland has to jump out of the way of the automobile. So they have actual probable cause that the suspect's committed a crime. And not only do we have that in this case, we have a finding by the district court that the plaintiff is judicially stopped from arguing that he hadn't committed a crime, that he hadn't attempted to run the officers over. So I would pose to the court that even if you find, because of Waterman,  you have to find that the second scenario in Tennessee v. Gardner applies. In Tennessee v. Gardner, they were actually analyzing a statute from Tennessee that had to do with a fleeing felon. So what we were specifically talking about in Tennessee v. Gardner is the idea that you had probable cause that someone was fleeing and they found it couldn't just be any felony. It had to be a felony where someone had inflicted serious physical harm. And the plea deal that the plaintiff in this case took, he pled down the assault and battery first. Well, what was the serious physical harm here? That he just about ran over. Just about. Well, he had attempted to run over two officers. But you said that there had to be serious physical harm, and there wasn't serious physical harm here. That he, involving the infliction of serious. Right. That's what you said. I was just wondering what the serious physical harm that was inflicted here was. Well, I mean, he attempted to run over them with a vehicle, which was attempted murder. I think that would qualify. Right, but Haro said that the reason why he shot at the car was to keep the car from escaping. He didn't say because we were in danger. He said he wanted to stop the car from escaping. Well, with all due respect, Your Honor, there's two officers here. And Kyle Strickland specifically says. Well, Strickland said that the reason he drew his weapon was that Williams was backing up and nearly struck Haro. But he also said, from my experience, he was getting ready to evade law enforcement. And that's what I believed he was getting ready to do. Evade law enforcement. And that might be what he originally thought. That's why he pulls his weapon. But he begins shooting when he fears that his life is in danger. And he's very clear about that during his deposition testimony. Did you address probable cause in your briefing? We did address the – we didn't address the probable cause aspect, but we did address the Tennessee versus Garner and the fact that it was objectively reasonable for the officers to shoot. Did the district judge address probable cause? The district judge did not. However, I believe that it still qualifies under the objectively reasonable standard. It's all encompassed. Additionally, Your Honor, I would like to point out that the findings of fact of the – I'm sorry, I'm out of time. No, go ahead and finish your sentence. The findings of fact of the judge with regard to Haro, what I'd like to point out is that those facts rely on the initial testimony of Haro. However, when he sees the photographs, he negates all that testimony and says, my diagram's not right. I think he says my diagram's crap. Okay. Thank you very much. Thanks. Okay, Mr. Callaway. Good morning, Your Honor. May it please the Court. My name is Jordan Callaway, along with Whitney Harrison. We represent the appellee, Johnny Williams. When a fleeing suspect's car passes an officer's position and no bystander is threatened, clearly established Fourth Circuit law holds that it's no longer reasonable to use deadly force to stop the suspect's escape. Even when events happen quickly, and even when the suspect has behaved badly seconds earlier, this Court has held that the car passing the officer eliminates the immediate threat to the officer. That's why Officer Haro's deposition testimony is so important. By acknowledging that the car, Mr. Williams' car, had passed both officers before shots were fired, Haro has introduced a series of events that if a jury were to accept them, the conduct would violate the clearly established law of Waterman and Crane. Now, the officers in this case want to reexamine the genuineness of that factual dispute. But in an interlocutory appeal, they do not get to do that. Similarly, Officer Haro does not get to pursue an interlocutory appeal on his statute of limitations argument either. Finally, even if the Court finds that it has jurisdiction over the clearly established question, this Court's recent finding in the Brown case shows that Waterman and Crane controls that issue. I did want to address first with the Court, Your Honor, the issue of jurisdiction, because they brace an interlocutory appeal to the challenge of the denial of summary judgment on qualified immunity. And what the Supreme Court has held is that the appealability of issues in that circumstance is very limited. In the, for example, the Mitchell case, it's only a final decision for interlocutory appeal purposes if it turns on an issue of law or what the Court described as a purely legal issue. If it is, in contrast, a fact-related dispute about the pretrial record, which is what they've raised here. Well, do we have an issue of law on whether this case is distinguishable from Waterman because this defendant, or Mr. Williams, had swerved in the direction of the officers prior? In a matter of seconds, seconds earlier, he had been swerving in their direction. And does that then raise the legal issue of whether this is a Waterman case or not? I believe that they could make out that part of the argument. But if that's where they're going to go, that's all they get. And what I mean by that is this. The Court would need to accept for the purposes of today's hearing and for a ruling on this case that the car had passed Mr. Williams at the time the shots were fired. Right. And I'm talking about the swerving toward the officers prior to that. Is that a basis for debate over whether the law was clearly established with regard to this situation? Your Honor, I do believe that's fair. I do believe that that part of the case, but only that part of the case is before the Court, not the statute of limitations part. We cited a bunch of cases from other jurisdictions or from sister circuits which have established that. So if we're just dealing with that part of it, then we should look strictly at that issue as it relates to Waterman. And so if you turn to sort of the Waterman case and look at the issues that they're talking about here, this without veering, which I understand them to be arguing essentially that that means that Waterman is distinguishable because before the case, he had not sort of tried to use his car as a weapon against the officers. But that's not what happened in the facts of Waterman. He had tried to run officers off the road with his car earlier in that instance. And when those first shots were fired, there were multiple people in front of the car, multiple officers in front of the car at the time. Also in Crane, another case that's directly on point here, that suspect had used his car as a weapon against officers shortly before the shot the court found was unconstitutional. He had used his car and moved it forward and actually bumped the door of the cruiser and bumped it shut. And so in both of those cases, this without veering language is not the key part of that case. Another point on this. In Brown, with this court address just last year, when the court was discussing both Waterman and Crane and they italicized certain words in those holdings that this is what made it clearly established in that case and why it's not clearly established in Brown, it didn't focus on it without veering. What they italicized relating to both those opinions was that the car had passed the officer. And so in Brown, that's what the court found was the difference between being clearly established and not clearly established. In other words, that was what was important about the holdings of Waterman and Crane as to the seriousness of the threat and the immediateness of the threat. Well, Crane doesn't put anybody on notice on anything, does it? Isn't it unpublished? It is, Your Honor. But when the court comes back to it in Brown, I mean, I'll take this language from Brown, essentially saying that Waterman and Crane showed that an officer can't fire once the car passes and no bystander is basically threatened. And the court said this, and I quote, Were we confronted with similar circumstances here, we would conclude that the officer violated clearly established law. That was this court's holding just last year. And frankly, Your Honors, all we're asking the court to do today is do what that language says the court would do just last year. And so that's, Crane was unpublished. But in the context of Waterman and what the court said about Crane just last year, we think it's incredibly important precedent for this issue. Also on the Waterman case, there's important language in that case. Specifically, the court said there that once the car passed the officer, and this is the court's language, the threat was eliminated as to the officer who had been passed. And so that was the court's language in describing the nature of the threat. I do want to address the issue that was just raised a moment ago about Garner and that somehow Garner gives a second path to allowing the use of deadly force. I agree that I didn't see that anywhere in their briefs or that being argued really to the district court or being addressed at any point by the district court. I also don't think that that's an accurate description of what Garner is there to stand for, especially in the context of the Graham factors, the three factors that the court considers when determining whether the use of force is reasonable, constitutionally reasonable. Then those three factors are included. Sotomayor, let me ask you before you start discussing factors, and I don't mean to interrupt you, but I've been thinking about how you're reciting our different cases. So are you saying that it's irrelevant what the person's conduct, the suspect's behavior was before the car passed the officers? I'm trying to just see how firmly planted you are on that issue. Is it that much of a bright-line rule, or can't we consider what happened earlier? I think it is the totality of the circumstances test, so I do believe the court can consider it. But I would also point out that in Waterman, the court made clear to say in making that distinction between first shots and second shots is that the moment that we are determining, excuse me, the determination as to whether the force was reasonable is based on that moment when the force is deployed and the seriousness of the threat at that moment. So yes, it is the totality of the circumstances test, but when we're looking at Waterman shots one through three versus Waterman shots four through six, we're saying four through six is not reasonable because at that moment, notwithstanding the fact that he had tried to run officers off the road a few minutes ago, and notwithstanding just a minute ago that he was accelerating his car in the general direction of the officers, at that moment, because the car had passed, his shots were not reasonable based on that moment. I believe it's the Greenwich case that maybe the court cites there, that it's the moment that the force is deployed, which is the crucial moment for determining the reasonableness of the force itself. There was some mention in opposing counsel's argument about distances and about how that might be somehow a distinguishing factor about Waterman. I didn't read anything in the record that was talking about distances in this case, so I don't know what the distances were specifically, but I don't think that that's in the record and that that would be in front of the court. They do make a reference, and I do want to discuss this, about these Supreme Court cases. They talk about Scott, and they talk about Plumhoff and Berceau and the Mullinex case, and a lot of those cases are very different just in this respect. A lot of those are extended-time car chase cases. I believe that's very different because in those instances, the threat that justified the use of deadly force was a threat to the general public. In those instances, for example, I believe Justice Alito's talked about in Plumhoff how the car chase had endangered dozens of cars on the road by a guy going hundreds of miles, 100 miles an hour down the highway. And as the chase was being sort of wrapped up, then he tried to get out of there and go back to endangering the public. And in that instance, then you've got perhaps a greater threat and perhaps more reasonable nature for using deadly force. But in this instance, it's 9 o'clock at night, there's no one around. In fact, when they go looking for witnesses, they have to go knock on someone's door because there's no one in the area at the time. And so I think that would distinguish Scott's and the Plumhoff case. Mullinex is also very different because in Mullinex, you've got an officer right in front of where the fleeing car is going. And as we've seen here, that's not the case there. He's running the stop sticks under the overpass right beneath where the officer shoots down. Now, Officer Huro did say in his deposition at one point, did he not, that he was concerned about the safety of others? Was that developed at all in the record further? Excuse me, I'm sorry. No, it's not. I mean, there's no indication that there's any readily identifiable member of the public that he's concerned about. And that's also very different than the Berceau case, which frankly if there's any case which is perhaps the best for them, it's the Berceau case. What's different in that case is at the time that the officer fired, and she was, I admit, slightly behind where the suspect was, what's different about that case is four feet in front of the suspect's car at that time was another car with a woman and her three-year-old daughter inside. And so when he starts to accelerate that car forward, there's someone four feet in front. And that justified the use of force there. That's what makes that case very different. I go to great lengths, I think, especially with Berceau, to try to say that establishes that we're in a gray area and that there's no clearly established law for that. But that's a very different case for that reason. It's also a very different case because earlier in that encounter, that officer had been inside the car, and that was a distinction this Court made in Brown last year, is that the officer was actually inside the car during the struggle, and that in part justified the use of force, or at the very least, excuse me, in Brown, it showed that it was not clearly established that his use of force was not reasonable under the Fourth Amendment. So I think those cases are very indistinguishable. Your Honor, I don't know if the Court is inclined, because of the jurisdictional issue, to get to Heroux's statute of limitations argument, but if so, I do believe I need to address it. They raise the argument that Heroux is somehow able to get summary judgment because the claim was not filed in a timely manner against him. Officer Heroux was named in the original complaint. Now, it wasn't served because it was filed, pro se, by an inmate at the time. But he was removed when the Court asked the inmate to put his complaint in proper form. He took out Heroux and put him in cradle based on the misidentification of who was the shooters. Three officers there, only two shooters. And there was no real consensus, even among the officers themselves, maybe even today, as to who fired the shot that actually hit Mr. Williams. And so there was a misidentification, but that was an entirely reasonable mistake to make under these circumstances. We think under Rule 15c, the relation back principle would apply here, that it would relate back to the original filing. The Krupski case is important on that. And for the elements of relation back, you've got the same transaction recurrence, that the new party had notice of the claim or can't claim prejudice, and that the new party knew or should have known that, but for the mistake, he was the target of the claim. And all of those factors apply here. Heroux was there that day. He knew he fired the shots. He knew it was not Criddle who fired the shots. He knew if there was going to be a claim by Mr. Williams against officers for the behavior that day, he was the target of it. And he was on notice of the claim as from the very beginning, both because he was named in the original complaint, but also because, as we've cited, there are several cases which talks about how notice can even be constructive notice. And we cited, for example, a case from the Western District of Virginia, the Wyatt case, which has very, very similar facts to this instance, where there was a use of force involving multiple officers, and there was confusion about which officer was involved, and the officers were either partners or worked closely together, and the court found we're not going to suggest that that officer, who was perhaps a partner with the other officer, didn't know that he was the intended target of the claim. There's also some mention of equitable tolling. They say equitable tolling doesn't apply here because the mistake that he made or, excuse me, that his pro se status, it's not sufficient to provide equitable tolling. The cases they cite there, the mistake that the claimant made was a mistake of law, just miscalculating the statute of limitations. That's not what we have here. It's a mistake of fact, a misidentification of who was responsible for the act. And that's an entirely reasonable mistake based on what the officers still dispute as to who was responsible for the act. Isn't there a better argument on the statute of limitations if we just don't have jurisdiction? Absolutely. That is the absolute top argument. I just wanted to make sure if the court were inclined to address it, that they had our arguments. But absolutely, we think there is no basis for an interlocutory appeal for the denial of summary judgment on the statute of limitations. If there are no additional arguments, the last point on Crane, and then I will sit down. Crane gave these officers exactly what they're asking for. They're saying because things happened so quickly, they should be given some leeway. Crane says, we'll give you leeway, but it was still unreasonable. And that's also important in Waterman, because Waterman said, the reason we can't find it was clearly established back in 2000 is because we have this Pittman case which says that if it does happen quickly, that perhaps it's not clearly established. Waterman says, no, no, no, no. Going forward, it is now clearly established that even though things happen quickly and even though there was a threat moments earlier, that when the car passes, that changes things from a constitutional perspective as to whether the use of force is reasonable. Again, if there are no additional questions, I will sit down. Thank you, Your Honor. All right. Thank you. Rebuttal. Briefly, I would like to address the fact that reasonable certainty in this case is not beyond debate. Counsel basically stood up here and agreed that it's not beyond debate. What we have here with Waterman, Waterman's recognition that the fleeing suspect didn't veer towards the officers and that he had passed through the toll plaza, is facts that are very distinguishable in this case. The officers, having reversed one time previously, the officers had no reason to believe that he wouldn't try to reverse again to hit. They had no reason to understand why he was trying to reverse and hit them in the first place. So having tried to reverse and hit Heru, there was no reason that they shouldn't suspect. It would be absolutely reasonable for them to suspect that he might reverse, having tried to hit Strickland one time prior, that he couldn't reverse and hit him and pin him to the back of Crittle's car. That would definitely be a significant injury if it had occurred. But the officers at that point are behind the car, so if you put it in reverse, they're going to see the lights come on, and yeah, they might consider it at that point, but that didn't happen. But it's what they have to be anticipating. This is all happening in a split second. It doesn't matter. It's whatever is objectively reasonable. It's not what's subjectively happening at that moment. No, it would be an objective fact. If you put it in reverse, they could see it. But the facts in the case are that even if he's off to the side, which we fully disagree with, even if he's off to the side shooting, he doesn't know that he's not going to do that. He's already done it to Heru one time. That makes this case very distinguishable because in Waterman, he had passed through the toll booth. There was no coming back. All right. Thank you very much. We will come down and greet counsel and then proceed to the next case.
judges: Barbara Milano Keenan, Henry F. Floyd, Stephanie D. Thacker